Lawrence **LANZA**, et al., Plaintiffs

v.

**SUGARLAND RUN HOMEOWNERS ASSOCIATION, INC., and Robert McNanley, Jr., Defendants.**

No. CIV. A. 00–036–A.

United States District Court, E.D. Virginia, Alexandria Division.

May 23, 2000.

Brad Lee Martin, Herndon, VA, Christopher Michael Dove, Leesburg, VA, for Plaintiffs.

Christina Antoinette Volzer, Stephen W. Robinson, McGuire, Woods, Battle & Boothe, McLean, VA, for Defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

A threshold dismissal motion in this employment contract and Fair Labor Standards Act ("FLSA")[1] dispute presents the issue, unresolved in this circuit, whether § 216(b) of the FLSA permits the recovery of punitive damages.

### I.[2]

Defendant Sugarland Run Homeowners Association ("Sugarland Run") provides

---

1. *See* 29 U.S.C. § 216(b).

2. The facts recounted here are derived from the complaint's allegations, and are assumed

housing and management services to homeowners in the Sugarland Run development. Defendant McNanley has been a member of the Board of Directors of Sugarland Run since March 1999 and president of the Board since November 1999. The five plaintiffs[3] were all employed by Sugarland Run in various capacities until February 27, 2000, when they were suspended. Plaintiff Lawrence Lanza was employed as a covenants coordinator at a rate of $11.00 per hour; plaintiff Michael Bertrand was employed as a maintenance worker at $10.50 per hour; plaintiff Jennifer Lanza was employed as an administrative assistant at $9.13 per hour; plaintiff Mark Greenawalt was initially hired as an assistant maintenance engineer, for which he was paid $10 per hour, but was later promoted to senior maintenance engineer for which he was paid $14.90 per hour. Plaintiff Marilyn Martin was employed as the General Manager of Sugarland Run at a salary of $37,000 a year; she subsequently received a raise to $44,000 a year. Martin's salary was based on a forty hour work week, but she could accumulate uncompensated "comp time" if she worked in excess of forty hours per week. This accumulated "comp time" could then be used to make up for any deficiencies in the event she worked fewer than forty hours in a week, thereby enabling her to receive her full weekly pay. All of the plaintiffs, including Martin, claim they worked substantial overtime hours without compensation in violation of the FLSA.

Plaintiffs filed suit on January 5, 2000 alleging that defendants unlawfully withheld the payment of overtime in violation of the FLSA. Over the weekend of Febru-

ary 26 and 27, 2000, defendants changed the locks on all the buildings in Sugarland Run so that plaintiffs could not enter any of the buildings when they reported for work the following Monday. On February 27, 2000, plaintiffs were informed via a message left on Martin's home answering machine that they were suspended, effective immediately. Two days later, plaintiffs were told that their employment would likely be terminated. Whether plaintiffs then voluntarily left defendants' employ, or were instead terminated, is disputed. Nevertheless, it is clear that after February 29, 2000, plaintiffs were no longer employed at Sugarland Run.

On April 24, 2000, after having received permission to do so, plaintiffs filed an amended complaint to include claims based on the events that occurred after the filing of the suit. In the amended complaint, plaintiffs restated their claim for unpaid overtime in violation of the FLSA (Count I), and added claims for (i) retaliation in violation of the FLSA (Count II) and (ii) breach of contract for defendants' failure to compensate them for their unused annual leave, which, they claim, was part of their employment agreement (Count III). In connection with their retaliation claim, plaintiffs seek punitive damages in the amount of $250,000 each. Defendants now move to dismiss plaintiff's claim for punitive damages for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P, on the ground that the anti-retaliation provisions of FLSA do not permit recovery of punitive damages.[4]

## II.

Dismissal for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., is only

to be true solely for the purpose of disposing of the threshold dismissal motion at bar. *See Martin Marietta Corp. v. International Telecom. Satellite Org.,* 991 F.2d 94, 97 (4th Cir. 1992).

**3.** A sixth plaintiff, Jeanene Masturzo, was employed by defendant Sugarland Run as a covenants and administrative assistant from December 1998 to December 1999. She joins in the overtime claim, but, as Masturzo volun-

tarily left defendants' employ prior to the filing of the suit, she is not a party to the retaliation claim that is the subject of the motion at bar.

**4.** Defendants' contemporaneous motion to dismiss plaintiffs' breach of contract claim was denied. *See Lanza, et al., v. Sugarland Run Homeowners Assoc., Inc., et al.,* Civ.A.No. 00–36–A, Order dated May 19, 2000.

appropriate where, construing the allegations in the light most favorable to the plaintiff and assuming the facts alleged to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Yet, where a plaintiff colorably states facts which, if proven, would entitle him to relief, a motion to dismiss should not be granted. *See Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Accordingly, for the purpose of disposing of this threshold dismissal motion, the facts alleged to constitute retaliation under § 216(b) are taken to be true; the only question presented is a question of law, namely whether punitive damages are available under the anti-retaliation provisions of the FLSA.

■ Remarkably, the question of the availability of punitive damages under § 216(b) of the FLSA seems to have been little litigated. The Fourth Circuit has not addressed the issue,[5] and the only two circuits that have, the Eleventh and the Seventh, are split.[6] Also split are the few district courts that have weighed in on the issue.[7] Given the absence of controlling or uniform authority, the question merits *de novo* consideration, and because it is a matter of statutory construction, analysis properly begins with the statutory language in issue.

■ Congress amended the FLSA in 1977 to provide for a private right of action when an employer violates the anti-retaliation provisions of the Act.[8] *See* 29 U.S.C. § 216(b). In so doing, Congress chose to describe the allowable remedies in only the most general terms. Thus, the relevant provision states as follows:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.[9]

**5.** There is a 1979 Fourth Circuit opinion stating that the FLSA "of course, makes no provision for the recovery of punitive damages." *Walker v. Pettit Construction Co.,* 605 F.2d 128, 130 (4th Cir.1979). Yet in reaching this conclusion, it appears that the panel did not consider the 1977 amendments to the FLSA, which expanded the available remedies and are in issue here. *See* Pub.L. 95–151, 91 Stat. 1252 (1977). Indeed, *Walker* cites a 1973 case as support for the proposition that the FLSA does not permit punitive damages. *See Walker,* 605 F.2d at 130 (citing *King v. J.C. Penney Co.,* 58 F.R.D. 649 (N.D.Ga.1973)). Thus, this opinion is not dispositive of the issue at bar.

**6.** *Compare Snapp v. Unlimited Concepts,* 208 F.3d 928, 933 (11th Cir.2000) (holding that punitive damages are not available under § 216(b) of the FLSA), *with Travis v. Gary Community Mental Health Ctr., Inc.,* 921 F.2d 108, 111–12 (7th Cir.1990) (1977 amendment to the FLSA authorizing suits for "legal relief" includes punitive damages).

**7.** *Compare Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 25 F.Supp.2d 1053, 1059–60

(N.D.Ca.1998) (allowing claim for punitive damages under the FLSA) *and O'Brien v. Dekalb–Clinton Counties Ambulance District,* 1996 WL 565817, at *6 (W.D.Mo. June 24, 1996) (unpublished disposition) (same), *with Bolick v. Brevard County Sheriff's Dept.,* 937 F.Supp. 1560, 1567 (M.D.Fla.1996) (punitive damages not available under the FLSA).

**8.** The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

**9.** The FLSA presumptively authorizes the district court to award liquidated double damages against employers who violate the statute. *See* 29 U.S.C. § 260; *Shea v. Galaxie Lumber and Constr. Co.,* 152 F.3d 729, 733 (7th Cir.1998). The district court may choose not to award liquidated damages, however, where the employer shows that it acted in good faith with reasonable grounds to believe that its actions did not violate the FLSA. *See* 29 U.S.C. § 260; *Shea,* 152 F.3d at 733.

*Id.*[10] This statutory language does not answer the question presented; it makes no mention at all of punitive damages. Instead, the provision states vaguely that the remedies shall include "such legal ... relief as may be appropriate" to achieve the purposes of the anti-retaliation provision. This language begs the question: Are punitive damages appropriate to effect the purposes of § 215(a)(3)? Nor is the legislative history helpful; as the Seventh Circuit noted, the language in issue originated in the Senate, but the committee report did not discuss it, and the Conference Committee, in adopting the language, merely noted that the bill authorizes suits "for appropriate legal and equitable relief," without discussing what constitutes appropriate relief. *See* H.R. Conf. Rep. No. 95–497 (1977); *see also Travis,* 921 F.2d at 112.

While the statutory language and the legislative history provide little guidance, the remedial scheme of § 216(b) points persuasively to the conclusion that the FLSA, as written, does not permit the award of punitive damages. This scheme makes clear that § 216(b) is designed to compensate the aggrieved employee, not punish the offending employer. While Congress did not limit the available remedies to those enumerated in § 216(b), all of the enumerated forms of relief—unpaid minimum wages, unpaid overtime, employment, reinstatement, promotion and lost wages—are compensatory in nature, designed "to put the plaintiff in the place she would have been absent the employer's misconduct." *Snapp,* 208 F.3d at 934. Even the liquidated damages provision is designed to compensate the employee for damages "too obscure and difficult of proof of estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); *see also Snapp,* 208 F.3d at 934. The compensatory nature of the enumerated remedies is important because, even though the enumeration is not exhaustive, the principle of *ejusdem generis* teaches that a general statutory term must be interpreted "in light of the specific terms that surround it." *Id.* (quoting *Hughey v. United States,* 495 U.S. 411, 419, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)). It follows, then, that any unlisted legal remedies must be compensatory in nature to come within the terms of the statute. To allow punitive damages, which, of course, are not compensatory, but rather are designed to "punish and deter the wrongdoer," would therefore be inconsistent with the statute's compensatory remedial scheme. *Snapp,* 208 F.3d at 934.

The soundness of this conclusion is confirmed by the presence of other provisions elsewhere in the FLSA which *are* clearly intended to punish and deter violations by employers, namely the statute's criminal penalties. *See* 29 U.S.C. § 216(a). Thus, § 216(a) provides that "[a]ny person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months or both." *Id.*[11] The presence of these clearly punitive provisions in a different clause of § 216, combined with the compensatory nature of the remedies enumerated in § 216(b), indicate that Congress did not intend to permit the recovery of punitive damages by an aggrieved employee under § 216(b). *See Snapp,* 208 F.3d at 935 ("[T]here is simply no reason to carry the punitive element over from section 216(a) to section 216(b), a provision intended to compensate, not punish."). Rather, under this remedial scheme, employees are to be compensated for any losses arising from violations of the

---

**10.** Until this amendment was enacted, there was no right of action for damages of any kind for retaliation. *See, e.g., Martinez v. Behring's Bearings Serv., Inc.,* 501 F.2d 104 (5th Cir.1974).

**11.** The imposition of imprisonment is only permitted under this subsection "for an offense committed after the conviction of such person for a prior offense under this subsection." 29 U.S.C. § 216(a).

statute, and employers who willfully violate the statute may be further subject to criminal penalties.

Perhaps the most compelling reason for finding that punitive damages are not allowed under § 216(b) of the FLSA is that courts have reached this conclusion in construing essentially similar language in the Age Discrimination in Employment Act ("ADEA").[12] Notably, the remedial section of the ADEA, like § 216(b), states, in pertinent part, that "[i]n any action brought to enforce this chapter, the court shall have jurisdiction to grant *such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter.*" 29 U.S.C. § 626(b) (emphasis added). The "legal relief" language in the ADEA is identical to that found in § 216(b), and it follows that both provisions should be identically construed. So it is significant that the Fourth Circuit has held that the ADEA language does *not* permit the recovery of punitive damages. *See Fariss v. Lynchburg Foundry,* 769 F.2d 958, 967 n. 11 (4th Cir.1985) (citing *Walker,* 605 F.2d at 130). And, it is also significant that other circuits considering this question under the ADEA have reached the same result.[13] In reaching this conclusion, these courts have reasoned that the ADEA's silence as to punitive damages, combined with the provisions for liquidated damages for willful violations of the Act, indicate that Congress did not intend to provide for the recovery of punitive damages. *See Walker,* 605 F.2d at 130; *Dean,* 559 F.2d at 1039. The persuasive force of this authority derives from more than simply the fact that the FLSA and the ADEA language is identical; the two statutory remedial schemes are similar, as well; where the ADEA has liquidated damages for willful violations, the FLSA has criminal pen-

alties. *See Snapp,* 208 F.3d at 939 & n. 16. In the case of both statutes, the omission of any explicit reference to punitive damages, combined with the existence of other, clearly punitive provisions elsewhere in the statute, persuasively suggest that Congress did not intend to allow aggrieved employees to recover punitive damages. And, "[w]here Congress has set out a clear scheme to remedy violations of a federal right, as ... it did in the FLSA," courts are limited to carrying out the congressional command and may not engraft punitive damages onto the statute. *Id.* at 939.

The Seventh Circuit's contrary conclusion in *Travis* is unpersuasive. *See Travis,* 921 F.2d at 111. Especially significant is that *Travis* fails to acknowledge and account for the Seventh Circuit's conclusion that language in the ADEA language, which is nearly identical to § 216(b), does not permit the recovery of punitive damages. *See Espinueva,* 895 F.2d at 1165. Also unaddressed in *Travis* is the significance of the other punitive provisions in the statute, i.e., the criminal penalties. Instead, the panel simply noted that "punitive damages are appropriate for intentional torts such as retaliatory discharge." *Travis,* 921 F.2d at 112. This reasoning, however, fails to consider that retaliatory discharge is necessarily an intentional and willful violation of the statute; were this reasoning adopted, punitive damages would be an appropriate remedy in *every* case arising under § 216(b). *See Snapp,* 208 F.3d at 936. It seems unlikely that Congress would have created a cause of action for which punitive damages are always an appropriate remedy without even mentioning such a remedy, particularly where, as here, Congress created alterna-

---

12.   *See* 29 U.S.C. § 621 *et seq.*

13.   *See Snapp,* 208 F.3d at 938 (following the former Fifth Circuit's decision in *Dean v. American Security Ins. Co.,* 559 F.2d 1036 (5th Cir.1977), not to allow punitive damages under the ADEA). Among the circuits holding that this language in the ADEA does not

permit the recovery of punitive damages is the Seventh Circuit, which has allowed the recovery of punitive damages under the FLSA. *Compare Espinueva v. Garrett,* 895 F.2d 1164, 1165 (7th Cir.1990) (compensatory and punitive damages not available in an ADEA action), *with Travis,* 921 F.2d at 111.

tive punitive measures in the form of criminal sanctions. *See* 29 U.S.C. § 216(a).

Equally unconvincing is the argument that because Congress limited the remedies for violations of the wage and overtime provisions of the FLSA, §§ 206–07, to unpaid compensation and liquidated damages,[14] but did not limit the remedies for violations of the anti-retaliation provisions, § 215(a)(3),[15] all remedies must therefore be available for violations of § 215(a)(3). While there is a difference between the remedies available for the two kinds of violations, it simply indicates the difference between the two types of claims. *See Snapp*, 208 F.3d at 937. For a claim of unpaid minimum wages and overtime, all that is needed to compensate an aggrieved employee fully is monetary relief because that plaintiff is presumably still employed in the same position. For a retaliation claim, however, where the plaintiff has suffered some adverse employment action, monetary relief may not be sufficient to make plaintiff whole. *See id.* As a result, Congress provided for such legal or equitable relief as may be appropriate "because the kinds of relief that a district court may need to award to compensate the plaintiff fully will vary with the facts of each case." *Id.* This grant of discretion to district courts to fashion appropriate relief does not mean, however, that Congress intended to allow for punitive damages when the statutory scheme indicates that the purpose of the remedies in § 216(b) is to compensate an aggrieved employee. *See id.*

And finally, it is important to note that the issue here is not whether some minor or insignificant matter may be judicially added to a statute to remedy an inadvertent legislative omission. Punitive damages are not a minor or insignificant aspect of a remedial scheme; to the contrary, they are of central significance, and thus it cannot be argued that the presence or absence of punitive damages is of little consequence and its absence from a statutory remedial scheme the product of inadvertent legislative omission.[16] Consequently, where, as here, the statute makes no explicit mention of punitive damages and the remedial scheme makes clear that the right afforded to aggrieved employees is compensatory in nature, courts may not engraft punitive damages onto the statute. Accordingly, defendants' motion to dismiss plaintiffs' claim for punitive damages must be granted. An appropriate order has entered.

---

**14.** *See* 29 U.S.C. § 260.

**15.** *See* 29 U.S.C. § 216(b).

**16.** *See Snapp*, 208 F.3d at 935 ("Nor would it be a sort of harmless error to include punitive damages as part of the 'legal relief' authorized by Congress is section 216(b).").