**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1700**

TANYA JACKSON; MICHAEL AGYEMAN; THOMAS GEORGE; ISAAC ASAVE,
on behalf of themselves and on behalf of all others
similarly situated,

Plaintiffs - Appellants,

v.

ESTELLE'S PLACE, LLC; JIREH PLACE, LLC; OUR PLACE, LLC;
DESTINY PLACE, LLC; DEBRA ROUNDTREE; MARY BELL,

Defendants - Appellees.

-----------------------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION;
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN
AFFAIRS,

Amici Supporting Appellants.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Leonie M. Brinkema,
District Judge. (1:08-cv-00984-LMB-TRJ)

Argued: May 14, 2010               Decided: August 12, 2010

Before GREGORY, AGEE, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Gregory wrote
a dissenting opinion.

**ARGUED:** Nicholas Woodfield, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellants. Edward S. Rosenthal, RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, LLP, Alexandria, Virginia, for Appellees. **ON BRIEF:** R. Scott Oswald, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellants. Katelin T. Moomau, Jonathan A. Simms, RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, LLP, Alexandria, Virginia, for Appellees. Susan E. Huhta, Laura E. Varela, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS, Washington, D.C., for Amici Supporting Appellants.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Tanya Jackson, Michael Agyeman, Thomas George, Isaac Asare, Sharon Doss, and Courtney Collins are present and former employees of several related entities that operate group homes for the developmentally disabled. Appellees, defendants below, are those entities and their principals (Estelle's Place, LLC; Jireh's Place, LLC; Our Place, LLC; Destiny's Place, LLC; Debra Roundtree, and Mary Bell). Appellants' claims arose under the overtime pay provision of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and state law. Early on, the parties settled the action, leaving to the district court, however, determination of the amount of attorney's fees to be awarded to Appellants as prevailing parties. See id. at § 216(b). Feeling aggrieved by the amount of the district court's award of attorney's fees ($36,000), Appellants filed the instant appeal.[1] For the reasons set forth below, we affirm.

I.

Appellants Jackson, George, Asare, Doss, and Collins were compensated on an hourly basis; Appellant Agyeman, on the other

---

[1] Although Appellants noted their appeal only from the denial of their motion to alter or amend the district court's order awarding attorney's fees, we have jurisdiction to consider the merits of the underlying order. See, e.g., Brown v. French, 147 F.3d 307, 311 (4th Cir. 1998).

hand, though not paid hourly, was nonetheless misclassified as an exempt employee for overtime purposes. Appellees effected the underpayments of wages by assigning Appellants to work a total of more than 40 hours per week, but at different group homes, while treating work at each group home (owned by a separate but related corporate entity) as work for a separate employer. Consequently, Appellees paid Appellants at the straight time rate rather than at the overtime rate of time-and-a-half for hours worked beyond 40 per week.

On September 22, 2008, Appellants Jackson, Agyeman, George, and Asare filed suit in the United States District Court for the Eastern District of Virginia against Appellees, seeking unpaid overtime compensation under the FLSA. Appellants Doss and Collins opted into the litigation as plaintiffs. Meanwhile, Appellants filed a Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees. On December 19, 2008, the district court granted Appellants' motion. Shortly after the district court ordered publication of notice of the pendency of the lawsuit to other employees, but before such notice was published, the parties negotiated a Confidential Settlement Agreement and General Release resolving all of Appellants' claims.

4

The Settlement Agreement stipulated that Appellants would be paid additional wages equal to unpaid overtime compensation (i.e., half-time) for all hours or fractions thereof worked in excess of 40 hours during any one work week (from September 22, 2005, through the date of the settlement), plus an equal amount in liquidated damages. The parties then stipulated to the following settlement amounts: Asare ($430.00), Collins ($567.50), Doss ($490.00), George ($4,032.00), Jackson ($1,963.50), and Agyeman ($12,471.34). Notably, of the 13 forms of relief sought in the complaint, nine were not addressed in the Settlement Agreement and were wholly abandoned by Appellants.[2] In particular, no injunctive relief was awarded, no relief was awarded on any state law claim, and Appellees were not required to alter their method of operation. In any event, pursuant to the Settlement Agreement, the district court entered

_____

[2] These nine prayers for relief were for (1) an order appointing plaintiffs and their counsel to represent similarly situated employees as to the FLSA claims, (2) certification of the breach of contract and quantum meruit classes and designation of plaintiffs as class representatives and their counsel as class counsel, (3) a preliminary and permanent injunction prohibiting the defendants from engaging in the allegedly unlawful practices, (4) an order awarding declaratory relief, (5) an order awarding restitution and disgorgement of profits, (6) a judgment awarding plaintiffs economic, compensatory damages, liquidated damages, and punitive damages, (7) pre-judgment interest, (8) equitable relief such as employment, reinstatement, promotion, or frontpay, and (9) interest due on unpaid wages.

5

an Agreed Order of Dismissal in Part, dated February 23, 2009, dismissing all of Appellants' claims with prejudice, reserving for itself the issue of attorney's fees and costs, as the parties had agreed.

Appellants promptly filed their motion for an award of attorney's fees. Following full briefing and a hearing, the district court issued a Memorandum Opinion and Order granting attorney's fees and costs. The district court noted that under this court's precedents, a reasonable fee would be calculated by determining a lodestar fee, followed by any appropriate reductions. See Grissom v. The Mills Corp., 549 F.3d 313 (4th Cir. 2008), where we stated:

> The parties also agree that after calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.

Id. 321 (emphasis added); see also Robinson v. Equifax Information Services, LLC, 560 F.3d 235, 243 (4th Cir. 2009).

The district court determined the appropriate hourly rates for counsel for Appellants, ranging from $350.00 per hour for the most experienced lawyer to $60.00 per hour for the legal assistant. The district court then determined the total hours reasonably expended by the four people who worked on the case.

6

Thus, the district court arrived at what it described as a "lodestar fee" of $47,800. Then, in determining the ultimate issue of a reasonable fee, the district court noted that only six plaintiffs joined the lawsuit, and their total recovery amounted to less than $10,000.00 before it was doubled under FLSA's liquidated damage provision. The court further noted that, of the six awards, four were for less than $1,000.00 before doubling and that Agyeman received the largest recovery, based only on his misclassification. Thus, the court reasoned that the $47,800.00 "lodestar fee" should be reduced because "[a]n attorneys' fee should bear some reasonable relationship to the recovery of plaintiffs." Given the "modest value" of the successful claims, the court determined that a reasonable fee, which it also described as a "lodestar," amounted to $36,000.00.

On May 18, 2009, Appellants filed a Motion to Alter or Amend the district court's order granting fees and costs pursuant to Fed. R. Civ. P. 59(e). On June 9, 2009, the district court denied Appellants' motion. Appellants have timely appealed.

II.

A.

We review a district court's award of attorney's fees for abuse of discretion. Johnson v. City of Aiken, 278 F.3d 333, 336

7

(4th Cir. 2002) (citing McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir. 1998); Freeman v. Case Corp., 118 F.3d 1011, 1014 (4th Cir. 1997)). "Our review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." Plyler v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990) (internal quotation marks, citations, and alteration marks omitted).

B.

A prevailing party is entitled to an award of reasonable attorney's fees and costs pursuant to the FLSA. See 29 U.S.C. § 216(b). Here, because the parties have agreed that Appellants are prevailing parties, Appellants are entitled to an award of attorney's fees and costs that they establish as reasonable. See Plyler, 902 F.2d at 277.

Appellants' challenge to the award in this case is a narrow one. Although Appellants sought fees and costs in excess of $87,000, they do not assign error to the district court's initial determination that the traditional lodestar amount in this case (hours worked x appropriate hourly rate) was $47,800. Rather, they limit their challenge to the district court's ultimate determination that a reasonable fee was the traditional lodestar amount less approximately 25%. Appellants make two

8

arguments in support of their contention that the district court abused its discretion in reducing the traditional lodestar by approximately 25% in this case. First, they contend that our opinion in Grissom does not allow such a reduction. Second, they contend that even if Grissom could be interpreted to allow such a reduction, such a reduction is prohibited by City of Riverside v. Rivera, 477 U.S. 561 (1986), and by the Supreme court's recent opinion in Perdue v. Kenny A., 130 S. Ct. 1662 (2010). We disagree.

1.

We have set forth the Grissom methodology, 549 F.3d at 320, above, which the district court cited in its order and which provides in part that a court should "award[] some percentage of the remaining amount [after reductions for unsuccessful claims], depending on the degree of success enjoyed by the plaintiff." (Emphasis added) Appellants contend that, inasmuch as they enjoyed "complete success on all claims," Appellant's Br. 11, there should not have been any reduction for their pursuit of unsuccessful claims and that, therefore, their "degree of success" under Grissom was effectively one hundred percent. Thus, according to Appellants, under Grissom, the only appropriate "percentage" of the traditional lodestar amount that constituted a "reasonable fee" is one hundred percent.

9

In support of this contention, Appellants seize on the district court's statement that "[i]t is unnecessary to subtract fees incurred for unsuccessful, unrelated claims or award only a percentage of this amount because plaintiffs settled all of their claims for full value." Having carefully reviewed the district court's orders, it is clear to us that, in context, the district court indeed followed Grissom, albeit somewhat awkwardly. In other words, we agree with Appellants to the extent that they contend that the methodology followed by the district court is somewhat less precise than one would hope, but we reject the contention that the district court deviated from the core mandate of Grissom in calculating a "reasonable fee."

Like most (if not all) of the courts of appeals, we have directed that in deciding what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), a district court looks to the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional

10

> relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

_Barber v. Kimbrell's Inc._, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting factors set forth in _Johnson v. Ga. Highway Express, Inc._, 488 F.2d 714 (5th Cir. 1974), _abrogated on other grounds by_ _Blanchard v. Bergeron_, 489 U.S. 87 (1989). In this case, the district court properly assessed the 12 factors and focused, most heavily, on factor number eight - "the amount in controversy and the results obtained." In doing so, the district court purported to arrive at an "initial" lodestar fee ($47,800), and then, after consideration of factor number eight, it arrived at its "final" lodestar fee of $36,000. Thus, although the district court arrived at a _reasonable fee_ as mandated by _Grissom_, it took the somewhat circuitous route of calculating a "final" lodestar by relying on factor eight in the _Kimbrell's_ analysis, rather than by expressly taking account of Appellants' unsuccessful claims and then taking a "percentage reduction" from the traditional lodestar, as contemplated by _Grissom_.[3]

---

[3] The district court described its approach in its order denying the motion to alter or amend, stating that: "After arriving at the lodestar figure of $36,000.00, the Court determined that further reduction [under _Grissom_] was unnecessary because plaintiffs had been fully compensated for the hours they worked. Finding that further reduction was unnecessary does not support the argument that the earlier reduction was in error."

Under the circumstances here, we have no hesitation in leaving undisturbed what the district court did, notwithstanding that its methodology was not congruent with that contemplated by Grissom. Plainly, the court was cognizant of the broad scope of the case as Appellants filed it, see supra page 5 and note 2, including the presence of state law claims (which were not "successfully" prosecuted) and the request for broad relief, compared to the more modest result achieved. We should not and do not fault the district court for an arguable analytic imprecision where, substantively, no abuse of discretion is evident. In so doing, we bear in mind the following reminder from the Supreme Court:

> [W]e have said repeatedly that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). The courts may then adjust this lodestar calculation by other factors.

Bergeron, 489 U.S. at 95 (emphasis added); and see Burlington v. Dague, 505 U.S. 557 (1992):

> We have [turned to the lodestar model], it must be noted, even though the lodestar model often (perhaps, generally) results in a larger fee award than the contingent-fee model. See, e.g., Report of the Federal Courts Study Committee 104 (Apr. 2, 1990) (lodestar method may "give lawyers incentives to run up hours unnecessarily, which can lead to overcompensation").

_Id._ at 566 (brackets added). In sum, despite its imprecise methodology, the district court plainly acted consonant with our Grissom mandate. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (noting that a district court may either identify particular hours to be eliminated or reduce the fee in light of the limited success in calculating fee award).

2.

Appellants' arguments relying on City of Riverside v. Rivera, 477 U.S. 561 (1986), and Perdue v. Kenny A., 130 S. Ct. 1662 (2010), fare no better than their arguments relying on Grissom. They contend that City of Riverside prohibits a limitation on an award of attorney's fees to a proportion of the damages awarded. As the district court stated, however, City of Riverside, did not impose a blanket prohibition on the use of the rule of proportionality. In that case, the Supreme Court merely "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." City of Riverside, 477 U.S. at 565 (emphasis added). The Court emphasized the _sui generis_ nature of civil rights cases, where plaintiffs "seek[] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms" and fee awards are used to deter future violations. _Id._ at 575-76. Nevertheless, the Court expressly held that "[t]he amount of damages a plaintiff

13

recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988." Id. at 574. There is no indication here that the district court relied solely on a proportionality approach.

Appellants' reliance on the Supreme Court's recent decision in Perdue is similarly unavailing. They contended in their Rule 28(j) submission that Perdue involved a rejection of an "arbitrary enhancement" of a lodestar fee, and that "if an arbitrary enhancement of the lodestar is reversible error, an arbitrary reduction of the lodestar would be . . . an abuse of discretion and reversible error." Appellants overstate, if they do not misstate, the holding in that case. In Perdue, the Court held that an attorney's fee based on the lodestar may be increased due to superior performance, but only in extraordinary circumstances. 130 S. Ct. at 1674. But while the Court held that an enhancement to the lodestar fee may be permissible, it found the justification there inadequate. Indeed, Perdue makes plain that the lodestar figure, though supported by a "strong presumption" of correctness, is not invariably the end of the analysis but, in some classes of cases, only the beginning:

> In light of what we have said in prior cases, we reject any contention that a fee determined by the lodestar method may not be enhanced in any situation. The lodestar method was never intended to be conclusive in all circumstances. Instead, there is a "strong presumption" that the lodestar figure is reasonable, but that presumption may be overcome in

14

those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

Id. at 1673 (emphasis added). In any event, nothing in Perdue persuades us that the district court's reduced fee award here was in any sense "arbitrary" or was otherwise the product of an abuse of discretion.

## III.

For the reasons set forth above, the orders of the district court are

AFFIRMED.

15

GREGORY, Circuit Judge, dissenting:

The fee award in this case is clearly wrong. After calculating the initial lodestar fee of $47,800, the district court stated that based on "the amount involved and the results obtained," it was reducing the fee award by twenty-five percent. J.A. 369.[1] While the majority correctly notes that this is an appropriate factor to consider under our precedent, we also have precedent that mandates such consideration occurs by comparing the relief sought to the relief awarded. Under the latter case law, I am left with the inescapable conclusion that the court abused its discretion by focusing on the value of the employees' claims and thus respectfully dissent.

I.

This Court has recognized that the factor relied on by the district court to reduce the lodestar fee, "the amount in controversy and the results obtained," Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978), is largely coextensive with the court's consideration of the employee's "degree of success." Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. 2007). "When considering the extent of

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

16

the relief obtained, we must compare the amount of the damages sought to the amount awarded." Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005). This comparison "rests on the idea that a prevailing plaintiff is less worthy of a fee award when one or more of his claims lack merit – that is, when he cannot demonstrate that he deserves the compensation he demanded in his complaint." Nigh, 478 F.3d at 190.

The above analysis is consistent with the Supreme Court's elucidation of how district courts should account for the "degree of success." In Hensley v. Eckerhart, the Supreme Court stated that in considering the "degree of success," "[t]he result is what matters." 461 U.S. 424, 435-36 (1983) (finding that in a case where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount"). The Court found that although district courts have discretion in making these judgments, the courts must consider this success or result "in comparison to the scope of the litigation as a whole." Id. at 440. For example, in Hensley itself, the Court explained that "had respondents prevailed on only one of their six general claims, . . . a fee award based on the claimed hours clearly would have been excessive." Id. at 436.

17

Following these principles, courts have reduced fee awards where FLSA plaintiffs recovered only a portion of the amount actually sought. See, e.g., Saizan v. Delta Concrete Prods. Co., Inc., 448 F.3d 795, 801 (5th Cir. 2006) (affirming the district court's reduction of the lodestar fee due to the difference between the amount initially sought in the complaint and the ultimate settlement amount); Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 558 (7th Cir. 1999) (affirming the district court's reduction of the lodestar fee because the plaintiff failed to obtain the full overtime pay that was asserted in the complaint and failed all-together on his claim for discrimination and its accompanying request for damages). Courts have also reduced fee awards based on degree of success when the plaintiffs prevailed on only some of the claims brought. See, e.g., Spegon, 175 F.3d at 558; Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2002).

In light of the above case law, the district court's focus on the damages awarded as compared to the attorneys' fee is more than "analytic imprecision" or "imprecise methodology." Maj. Op. at 12. Rather, it constitutes error. In its initial determination of the fee, the court stated that the employees' "total recovery was less than $10,000 before being doubled under the liquidated damages provision of the FLSA," that "of the six

18

awards, four were less than $1,000 before doubling," and that "[a]n attorneys' fee should bear some reasonable relationship to the recovery of the plaintiffs." J.A. 369. The court then stated that it was reducing the lodestar fee by twenty-five percent "[g]iven the modest value of the plaintiff's claims." J.A. 369. No other explanation was given for the fee reduction at the time of the determination. No comparison of the relief sought to the relief awarded was conducted by the court, as mandated by case law when considering "results" or the "degree of success." Nor did the court decide that any claims put forward by the employees lacked merit. Subsequently responding to the employees' objection to the fee reduction, the court's main justification for reducing the fee remained its belief that "the amount of plaintiffs' claims and their eventual recovery was quite modest." J.A. 418.

"A presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." Cowan v. Prudential Ins. Co. of America, 935 F.2d 522, 526 (2d Cir. 1991). The size of the damage award carries even less weight here given that the case arose under the fee-shifting provision of the FLSA. See Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract

19

effective legal representation."); Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights." (alteration in original) (internal quotation marks and citations omitted). Thus, by subjectively labeling the employees' success "modest" and failing to look at the success of the employees' claims "in comparison to the scope of the litigation as a whole," Hensley, 461 U.S. at 440, the court abused its discretion.

While the court did have discretion to consider the size of the damages award, that amount was relevant only when compared to the damages sought. Mercer, 401 F.3d at 204. The district court itself found that no reduction for "degree of success" was necessary because the employees "settled all of their claims for full value." J.A. 370 (emphasis added). I assume that the district court meant what it said. Indeed, full success is supported by the record. The employees negotiated a settlement that provided them with the maximum monetary relief due under the FLSA – the full amount of overtime pay owed plus an equal amount of liquidated damages. When compared to the scope of

20

litigation as whole, which evolved solely around the FLSA claims, this relief cannot be classified as limited. There was no other claim that the employees failed to succeed on the merits, and the majority even agrees that the settlement agreement "resolv[ed] all of Appellants' claims." Maj. Op. at 4. Thus, the full lodestar fee should have been awarded.[2]

The majority closes its eyes to the district court's focus on the value of the employees' claims. Beyond repeating the same mistake made by the district court – judging the result obtained as "modest" in and of itself, see maj. op. at 12 (describing the employees' full recovery as a "modest result") – the majority seems to assert that the district court correctly compared the result obtained to the result sought in justifying the fee reduction. This cannot be the case. The district court did, only after the employees objected, state that it compared the relief sought to the relief obtained, and that the employees "did not receive any of the other forms of relief they sought in the complaint." J.A. 418.[3] The court is referring to the prayer

---

[2] This is especially so given the "strong presumption" that the full lodestar fee is reasonable and owed to prevailing attorneys. City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

[3] The court also claims that the employees obtained limited success because only six employees joined the lawsuit. It is unclear how this fact means that the six employees that did opt in were not successful. The fact that they settled their claims
(Continued)

21

for relief contained in the complaint, which sought punitive damages, a request for declaratory judgment, and various forms of injunctive relief. The majority likewise cites to the prayer for relief, maj. op. at 5, as proof that a fee reduction is appropriate because the employees failed to obtain every form of relief requested. In this case, placing such a burden on the employees in order for them to obtain the full lodestar fee, which is presumptively reasonable, is unfounded. First, as the employees and amicus point out, punitive damages and reinstatement or other injunctive relief are not available for claims under the FLSA. EEOC v. Gilbarco, Inc., 615 F.2d 985, 987 n.1 (4th Cir. 1980) (finding that only the Secretary of Labor may bring an action for injunctive relief); Lanza v. Sugarland Run Homeowners Ass'n, Inc., 97 F. Supp. 2d 737, 741 (E.D. Va. 2000) (holding that punitive damages are not allowed under the FLSA). Therefore, the employees argue that the request for such relief was merely boilerplate language and should not provide a basis for finding limited success. There

within seven days of the district court's granting their Motion to Allow Notice to Similarly Situation Employees would seem to indicate that the employers settled quickly to avoid a larger damages award, meaning the employees were successful. If the court did rely on the number of employees that opted in, this was legal error. See Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 727-28 (E.D.N.Y. 2009).

is support for this assertion. See Smith v. District of Columbia, 466 F. Supp. 2d 151, 160 (D.D.C. 2006) ("The District of Columbia argues that Plaintiff's degree of success – the award of $72,000 – should be measured against the ad damnum clause in her Complaint. That is just plain foolish. Ad damnum requests, as all judges and litigants know, rarely bear any relationship to reality or expectations."). Second, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley, 461 U.S. at 435. Here, the result was significant and the best possible under the FLSA, which was the employees' only stated source of relief. In "the scope of the ligation as a whole," id. at 440, the relief was not limited.

Finally, because the other relief referred to by the district court and the majority is available only through the breach of contract or quantum meruit claims, the court must have necessarily meant that the failure of the employees to prevail on those claims, in addition to the FLSA claim, merited a reduction in the lodestar fee. The majority specifically cites "the presence of state law claims." Maj. Op. at 12. Yet, it was impossible for the employees to prevail on both the FLSA claim and the breach of contract/quantum meruit claims. Quantum

23

meruit was an alternative to the breach of contract claim. Additionally, the breach of contract claim nowhere relies on Virginia law and asserts no contractual basis for the claim other than the FLSA. Thus, the breach of contract duplicates the FLSA claim and is preempted under this Circuit's precedent. See Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007). The court, therefore, relied on an alternative claim on which the employees had no chance of success.

It is telling that the majority omits discussion of the district court's final rationale for reducing the lodestar fee – that the employees "did not achieve the sort of public benefits discussed in City of Riverside." J.A. 418. This assertion is patently incorrect. As the court itself recited in the same order, "damages in civil rights cases also serve[] the public interest, for example, by deterring future civil rights violations." J.A. 417 (citing City of Riverside v. Rivera, 477 U.S. 561, 575 (1986)). In City of Riverside, the Supreme Court stated, "[r]egardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." 477 U.S. at 574. Thus, the public interest promoted by civil rights statutes, such as the FLSA, "is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters

24

future violations." Quarantino, 166 F.3d at 426. Therefore, counsel's efforts to secure a full recovery in this case is exactly the type of private enforcement of wage and hour rights that achieves a public benefit. See Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313, 1327 (M.D. Fla. 2001) ("It is recognized that the FLSA is an important piece of social legislation. Accordingly, the public derived a benefit from the plaintiffs' recovery on their FLSA claims."). Sadly today's opinion discounts the public benefit that unquestionably accompanied counsel's efforts.[4]

## II.

Additionally, the majority fails to recognize that although the court did not run afoul of the Supreme Court's rejection of a rule of strict proportionality, see City of Riverside, 477 U.S. at 578, the district court's emphasis on the size of the attorneys' fee and its pro rata reduction of the fee comes dangerously close to such violation and has been soundly rejected by other courts. See Simpson v. Merchants & Planters Bank, 441 F.3d 572, 581 (8th Cir. 2006) (finding in the context

---

[4] The opinion goes further and, in an attempt to affirm the "imprecise" reasoning of the district court, throws in a quote suggesting counsel ran up hours in this case, maj. op. at 12, an allegation of which there is no evidence whatsoever.

25

of an Equal Pay Act case that "a pro rata reduction [in attorneys' fees] would not normally be appropriate . . . [and that the court had] explicitly rejected a 'rule of proportionality' in civil rights cases because tying the attorney's fees to the amount awarded would discourage litigants with small amounts of damages from pursuing a civil rights claim in court"); Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

Even if the majority is correct that some reduction in the fee award was appropriate, which I do not believe to be the case, the district court's method of reducing the award by the arbitrary figure of twenty-five percent without any explanation as to how the percentage was arrived at is an abuse of discretion. It is precisely this subjectivity on the part of the district court that the lodestar analysis guards against, making the Supreme Court's decision in Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662 (2010), particularly relevant. In

Perdue, the Court considered whether a district court abused its discretion in increasing the lodestar fee by seventy-five percent based on what the court believed to be extraordinary results. Id. at 1669. The Court first noted "the lodestar method is readily administrable" because "the lodestar calculation is 'objective,' and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." Id. at 1672 (citations omitted). The Court then noted that while "[t]he lodestar method was never intended to be conclusive in all circumstances," "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id. at 1673. The court found only a few exceptional circumstances in which superior attorney performance would lead to an increased lodestar fee. Id. at 1674. One such instance was when "an attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." Id. However, in such a rare case, the Court held that "the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal,

27

such as by applying a standard rate of interest to the qualifying outlays of expenses." Id. at 1674-75.

As for the seventy-five percent increase in the lodestar fee in Perdue, the Court found that "this figure appears to have been essentially arbitrary. Why, for example, did the court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%?" Id. at 1675. Thus, although the Court found that an enhanced fee was possible in some circumstances, it reversed the fee award because "when a trial judge awards an enhancement on an impressionistic basis, a major purpose of the lodestar method—providing an objective and reviewable basis for fees is undermined." Id. at 1676 (citation omitted).

Here, the same prohibition of subjectivity should apply when a judge asks whether a plaintiff's "results obtained" are limited. The lodestar fee is presumptively reasonable and while the district court did have discretion to reduce the fee based on limited success, the court arbitrarily decreased the lodestar fee by twenty-five percent even if we assume success was limited. The court provided no rationale for why the decrease was not above or below the number it chose, offering no "objective and reviewable basis," id. at 1676, for the percentage decrease. I therefore believe today's decision undermines the very purpose of the lodestar approach.

III.

Because the district court abused its discretion in reducing the presumptively reasonable lodestar fee based on its determination that the value of the employees' award was "modest" and in arbitrarily choosing a twenty-five percent reduction, I would reverse the order of the district court and remand with instructions to award the full fee of $47,800.