PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KENNETH R. GRISSOM, II,

      *Plaintiff-Appellee,*

v.

THE MILLS CORPORATION,

      *Defendant-Appellant.*

No. 07-1777

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:06-cv-00961-GBL)

Argued: September 25, 2008

Decided: December 3, 2008

Before TRAXLER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
James C. DEVER III, United States District Judge
for the Eastern District of North Carolina,
sitting by designation.

Vacated and remanded by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge Traxler and Judge Dever joined.

## COUNSEL

**ARGUED**: Stephen Barret Stern, ROSS, DIXON & BELL, L.L.P., Washington, D.C., for Appellant. Elaine C. Bredehoft,

CHARLSON, BREDEHOFT & COHEN, P.C., Reston, Virginia, for Appellee. **ON BRIEF**: Prashant K. Khetan, Jonathan Cohen, ROSS, DIXON & BELL, L.L.P., Washington, D.C., for Appellant. Carla D. Brown, Brittany J. Sakata, CHARLSON, BREDEHOFT & COHEN, P.C., Reston, Virginia, for Appellee.

---

## OPINION

HAMILTON, Senior Circuit Judge:

In this appeal, the Mills Corporation (Defendant or Mills) challenges, on several grounds, the district court's entry of a judgment awarding its former employee Kenneth Grissom (Plaintiff) $325,484.08 in attorneys' fees and costs (the Fee Award). The Fee Award followed Plaintiff's acceptance of Defendant's $130,000.00 offer of judgment made pursuant to Federal Rule of Civil Procedure 68 (Rule 68). For reasons that follow, we vacate the Fee Award and remand for further proceedings consistent with this opinion.

I.

Defendant, a publicly traded corporation in the business of developing large commercial real estate projects such as shopping malls, employed Plaintiff as a vice president and project manager from January 2000 until it discharged him on August 16, 2005, on the asserted ground of poor job performance. At the time of his discharge, Plaintiff was the project manager for a redevelopment/expansion project of a retail mall called the Shops at Riverside Square, in Hackensack, New Jersey (the Riverside Project). Plaintiff not only disputed Defendant's assertion of poor job performance, but he also claimed that Defendant illegally discharged him in retaliation for engaging in whistleblower activity protected by the Sarbanes-Oxley Act of 2002 (SOX), 18 U.S.C. § 1514A.

In relevant part, § 1514A provides "whistleblower protection" for employees of publicly traded companies who are "discharge[d], . . . harass[ed], or in any other manner discriminate[d] against . . . in the terms and conditions of employment because of any lawful act done by the employee":

> (1) to provide information . . . which the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to . . .

> * * *

> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); . . . .

*Id.* § 1514A(a)(1)(C).

On August 18, 2006, Plaintiff filed the present civil action against Defendant, alleging four claims. After voluntarily dismissing one such claim, Plaintiff filed an amended complaint alleging the following three claims: (1) common law breach of contract; (2) common law defamation *per se*; and (3) violation of SOX's whistleblower provision.[1] In his breach of contract claim, Plaintiff alleged that Defendant failed to pay him certain promised bonuses. In his defamation *per se* claim,

---

[1]Plaintiff had previously filed an administrative complaint against Defendant with the United States Department of Labor (DOL), alleging his same SOX whistleblower claim. However, once Plaintiff notified DOL of his intention to file the present civil action in federal court, DOL discontinued its investigation of the allegations in Plaintiff's administrative complaint.

Plaintiff alleged that Defendant, "through its representative, Nicholas Sharr, made false and defamatory statements concerning [Plaintiff] and portrayed him in a light to suggest he was unfit, inept, lacked integrity, and/or was unable [to] perform his duties of employment, which constituted defamation *per se.*" (J.A. 34). In his SOX whistleblower claim, Plaintiff alleged that Defendant discharged and defamed him (by falsely accusing him of misappropriating confidential company documents) in retaliation for his expressing concern to his direct supervisor, Nicholas Sharr, and other specifically named high-level company executives that, in two consecutive Form 8-K Reports that Defendant had filed with the Securities and Exchange Commission, *see* 17 C.F.R. § 240.13a-11, Defendant had knowingly underreported the actual projected cost of the Riverside Project by approximately eighteen percent and twelve percent respectively.

Approximately one month prior to the close of discovery, on May 11, 2007, Defendant made a Rule 68 offer of judgment in the amount of $130,000.00 (Defendant's Rule 68 Offer of Judgment). At all times relevant to the present case, Rule 68 provided, in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, *with costs then accrued*. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not

more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed. R. Civ. P. 68 (emphasis added).[2] In *Marek v. Chesny*, 473 U.S. 1 (1985), "the Supreme Court held that costs which are shifted under Rule 68 include all costs properly awardable under relevant substantive statutes, including statutes which define costs to include attorney's fees." *Marryshow v. Flynn*, 986 F.2d 689, 691 (4th Cir. 1993).

Significantly, Defendant's Rule 68 Offer of Judgment specified:

> This Offer of Judgment does not cover any attorneys' fees and costs [Plaintiff] has incurred. Rather, the issue of attorneys' fees and costs shall be resolved in a separate proceeding through a petition to the Court, where the Court shall determine the extent to which [Plaintiff] and/or his attorney are entitled to fees and costs, if any.

(J.A. 72).

On May 22, 2007, Plaintiff accepted Defendant's Rule 68 Offer of Judgment, and the Clerk of Court entered judgment in favor of Plaintiff in the amount of $130,000.00. On the same day, Plaintiff also filed a petition for an award of attorneys' fees and costs (the Petition or Plaintiff's Petition) with respect to his SOX whistleblower claim. The Petition, along with a supplemental petition for an award of attorneys' fees and costs filed by Plaintiff (Plaintiff's Supplemental Petition), sought "attorneys' fees related to Plaintiff's counsel work

---

[2]We note that, effective December 1, 2007, "the language of Rule 68 [was] amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Advisory Committee's Notes on Rule 68. Such changes were "intended to be stylistic only." *Id.*

done since the initial complaint filed with [DOL]." (J.A. 1007). As summarized by the district court:

> In Plaintiff's Petition, he seeks $370,305.00 in attorneys' fees, $38,790.15 in non-taxable costs, and $6,934.01 in taxable costs. In Plaintiff's Supplemental Petition, he seeks an additional $27,280.00 in attorneys' fees and $3,922.95 in non-taxable costs. The grand total of attorneys' fees and non-taxable costs Plaintiff seeks is $447,232.11.

(J.A. 1007-08). Notably, Plaintiff's Supplemental Petition, filed June 8, 2007, sought an award for attorneys' fees and costs for "time and expenses expended from May 22, 2007 through June 7, 2007." (J.A. 925).

In ruling on both petitions, the district court concluded that Plaintiff was a prevailing party under SOX's fee-shifting provision. Next, having found that Plaintiff had demonstrated "that the time and labor, and costs sought [were] seventy-five percent (75%) reasonable," the district court reduced the total amount of attorneys' fees and costs (taxable and non-taxable) sought by Plaintiff by twenty-five percent to compensate for what the district court "perceive[d] as duplicated or misutilized time expended." (J.A. 1015). In addition, the district court subtracted $9,940.00 for non-related work done on *Connolly*.[3] With these subtractions, on July 23, 2007, the district court awarded Plaintiff a total of $325,484.08 in attorneys' fees and costs.[4]

---

[3]The reference to *Connolly* concerns a civil action between one of Plaintiff's former coworkers and Defendant based upon allegations of age discrimination. Adversarial counsel in the present case were also adversarial counsel in *Connolly*. Following a jury trial in *Connolly* in September 2006, the jury found in favor of Defendant.

[4]Defendant points out that on July 9, 2007, the district court awarded Plaintiff $4,082.74 in taxable costs, which appears to be for the same items of taxable costs included in the Fee Award. Because we vacate the Fee Award and remand for further proceedings, we instruct the district court to clarify and/or rectify this double-counting discrepancy on remand.

This timely appeal by Defendant followed. On appeal, Defendant first argues that Plaintiff is entitled to absolutely no attorneys' fees and costs, because he is not a prevailing party under SOX's fee-shifting provision, 18 U.S.C. § 1514A(c)(1). Alternatively, assuming *arguendo* that we conclude that Plaintiff is entitled to some amount of attorneys' fees and costs as a prevailing party, Defendant seeks vacature of the Fee Award and a remand with instructions to implement various reductions.

## II.

Defendant first challenges as erroneous the district court's threshold conclusion that Plaintiff is eligible for an award of attorneys' fees and costs under SOX. *See* 18 U.S.C. § 1514A(c). In this regard, Defendant argues that Plaintiff did not prevail on the merits of his SOX whistleblower claim in any manner, and therefore, cannot recover an award of attorneys' fees and costs as a prevailing party under SOX.

Defendant's argument raises a legal question, which we review *de novo*. *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002) ("The designation of a party as a prevailing party . . . is a legal determination which we review de novo."). SOX provides that "[a]n employee prevailing" on his SOX whistleblower claim, "shall be entitled to all relief necessary to make the employee whole," 18 U.S.C. § 1514A(c)(1), including "compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." 18 U.S.C. § 1514A(c)(2)(C). As an initial matter, we note that although § 1514A(c) does not use the term of art "prevailing party," as commonly used in other federal fee-shifting statutes, *see, e.g.*, 42 U.S.C. § 1988(b), the parties agree, and we think reasonably so, that the jurisprudence developed with respect to such term of art applies with equal force in an action in determining whether Plaintiff is "[a]n employee prevailing" on his SOX whistleblower claim, *id.*

§ 1514A(c)(1). *Cf. Smyth ex rel. Smyth*, 282 F.3d at 274 ("The term 'prevailing party,' as used in § 1988(b) and other fee-shifting provisions, is a 'legal term of art,' and is interpreted consistently—that is, without distinctions based on the partic-ular statutory context in which it appears.") (some internal quotation marks omitted) (citations omitted).

To evaluate whether Plaintiff is a prevailing party with respect to his SOX whistleblower claim, we are guided by the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 (2001). *See also Doe v. Boston Pub. Sch.*, 358 F.3d 20, 25 (1st Cir. 2004) (Supreme Court's reasoning in *Buckhannon* is presumed to apply generally to all fee-shifting statutes using the prevailing party terminology); (*T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 474-75 (7th Cir. 2003) (*Buckhannon* definition of "prevailing party" extends consistently to federal fee-shifting provisions). In *Buckhan-non*, the Supreme Court considered the question of whether the term of art "prevailing party," as employed by Congress in numerous fee-shifting statutes, "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 600. In answering this question in the negative, the Court held that for a party to be considered a "prevailing party," there must be a "mate-rial alteration of the legal relationship of the parties," 532 U.S. at 604 (internal quotation marks omitted), and there must be "judicial *imprimatur* on the change," *id.* at 605 (emphasis in original). Notably, quoting Black's Law Dictionary, the Court also made clear that "'[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . .,'" is a "prevailing party" for purposes of the various federal fee-shifting statutes. *Id.* at 603 (quoting Black's Law Dictionary 1145 (7th ed. 1999)) (alteration in original).

Here, Plaintiff is a prevailing party under the *Buckhannon* test. First, on May 22, 2007, judgment in favor of Plaintiff and against Defendant was entered for $130,000.00. Such judgment created a material alteration of the legal relationship between Plaintiff and Defendant by imposing upon Defendant a legally enforceable obligation to pay Plaintiff $130,000.00. *Utility Automation 2000, Inc. v. Choctawhatchee Electric Cooperative, Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002) ("Rule 68 judgment represents a judicially sanctioned change in the relationship between the parties.") (internal quotation marks omitted). Second, there is judicial imprimatur on the change in that the district court has the inherent power to compel Defendant to satisfy such judgment. *Id.* (accepted offer of judgment made pursuant to Rule 68 has necessary judicial imprimatur per *Buckhannon* "in the crucial sense that it is an enforceable judgment against the defendant"). *Cf. Spallone v. U.S.*, 493 U.S. 265, 276 (1990) (in selecting means to enforce consent judgment, district court is entitled to rely on axiom that courts have inherent power to enforce compliance with lawful orders through civil contempt). In sum, we hold that Plaintiff is a "prevailing party" with respect to his SOX whistleblower claim, and thus is statutorily eligible for an award of attorneys' fees and costs under SOX.[5]

---

[5]Perhaps anticipating this holding, Defendant alternatively argues that the $130,000.00 judgment entered in Plaintiff's favor was *de minimis* in light of Plaintiff's far higher pretrial settlement demands, resulting in Plaintiff "at best, achiev[ing] a 'technical victory' that does not merit an award of attorneys' fees" and costs. (Defendant's Opening Br. at 24). Defendant also alternatively argues that the district court abused its discretion in awarding Plaintiff any amount of attorneys' fees and costs, because, according to Defendant, Plaintiff misappropriated company documents in anticipation of litigation. After considering the entire record on appeal, we reject both arguments, finding no abuse of discretion in the district court's threshold decision to award Plaintiff some amount of attorneys' fees and costs as a prevailing party on his SOX whistleblower claim.

III.

Defendant next argues that the district court erred in award-ing Plaintiff attorneys' fees and costs accrued after May 11, 2007, the date of its Rule 68 Offer of Judgment. In support, Defendant directs our attention to the express language of Rule 68: "More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, *with the costs then accrued.*" Fed. R. Civ. P. 68 (emphasis added).[6]

Plaintiff responds that he is entitled to attorneys' fees and costs beyond May 11, 2007, despite the just underlined lan-guage of Rule 68, because the language in Defendant's Rule 68 Offer of Judgment "contemplates the payment of fees and costs *after the date* of the Offer." (Plaintiff's Br. at 45). In support, Plaintiff points to the following language in Defen-dant's Rule 68 Offer of Judgment:

> This Offer of Judgment does not cover any attor-neys' fees and costs Grissom has incurred. Rather, the issue of attorneys' fees and costs shall be resolved in a separate proceeding through a petition to the Court, where the Court shall determine the extent to which Grissom and/or his attorney are enti-tled to fees and costs, if any.

(J.A. 72).

We agree with Defendant that the district court erred in awarding Plaintiff attorneys' fees and costs accrued *after* May

---

[6]Notably, Defendant did not dispute below and does not dispute in its opening appellate brief that Rule 68's use of the term "costs," in the con-text of the present case, includes attorneys' fees. Accordingly, we assume *arguendo*, for purposes of addressing Defendant's argument on this issue, that Rule 68's use of the term "costs," in the context of this case, includes attorneys' fees.

11, 2007, the date of its Rule 68 Offer of Judgment. First, Rule 68, by its plain and unambiguous terms, provides for entry of judgment in favor of the plaintiff on terms specified in an offer of judgment, plus pre-offer costs (here, including attorneys' fees). The contract language to which Plaintiff points in no way makes attorneys' fees and costs accrued *after* Defendant's Rule 68 Offer of Judgment part of the offer of such offer of judgment. The language upon which Plaintiff relies says nothing about altering the normal operation of Rule 68 to allow Plaintiff to recover costs beyond May 11, 2007. Indeed, when the language upon which Plaintiff relies is read, as it should be, in conjunction with Rule 68, it is clear that the reference to "the issue of attorneys' fees and costs" pertains only to attorneys' fees and costs accrued as of the date of the Defendant's Rule 68 Offer of Judgment. *Cf. Marek*, 473 U.S. at 7 (if amount of costs is not specified in Rule 68 offer of judgment, district court is obliged to calculate costs then accrued under the statute or contract at issue and add that to the final judgment). In sum, we hold the district court erred in awarding Plaintiff post-offer attorneys' fees and costs. Accordingly, we vacate the district court's final judgment and remand for further proceedings to correct this error.

IV.

Defendant next contends that, assuming *arguendo* Plaintiff is entitled to recover some amount of attorneys' fees and costs as a prevailing party on his SOX whistleblower claim, the district court abused its discretion in arriving at the amounts awarded. In this regard, Defendant attacks the district court's analysis on numerous grounds. The following three are worthy of us specifically addressing: (1) Plaintiff failed to carry his burden of proof that the hourly rate sought for each of his attorneys was reasonable; (2) the district court abused its discretion when determining the number of hours reasonably expended by Plaintiff's attorneys; and (3) the district court's finding that the deadlines it imposed required Plaintiff to

work at a faster pace is clearly erroneous, and thus, the district court erred by factoring such finding into its Fee Award.[7]

We review a district court's award of attorney's fees for abuse of discretion. *Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir. 2002). Indeed, "[o]ur review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) (internal quotation marks, citations, and alteration marks omitted).

Here, the parties agree that in calculating an appropriate attorneys' fee award, a district court must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson/Barber* factors when making its lodestar determination. *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting twelve factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). *See also Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (approving twelve factors set forth in *Johnson*); *Trimper v. City of Norfolk*, 58 F.3d 68, 73-74 (4th Cir. 1995) (applying *Johnson/Barber* factors in reviewing fee award under § 1988).

> This court has summarized the *Johnson* factors to include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the

---

[7]We reject the remainder of Defendant's other grounds of attack as being without merit.

outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987).

The parties also agree that after calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

Of the three arguments by Defendant in challenge to the amount of the Fee Award that we specifically address, the first takes aim at the district court's determinations as to the reasonable hourly rates of Plaintiff's various counsel to be used in making the lodestar calculation. Essentially, Defendant challenges the sufficiency of the evidence in support of the district court's hourly rate determinations.

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal pro-

> fession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

*Plyler*, 902 F.2d at 277 (internal quotation marks and citations omitted). *See also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" align with prevailing rates). "[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994).

In support of his burden to establish the prevailing market rate of attorneys' fees in the relevant community where the district court sits (*i.e.*, the Eastern District of Virginia), Plaintiff: (1) filed attorney billing records and affidavits of his lead counsel and junior members of the firm representing him; (2) pointed to several fee awards by courts in other discrimination cases; and (3) filed a copy of a schedule of prevailing hourly rates for litigation counsel in the Washington, D.C. area, known as the Laffey Matrix, maintained by the United States Attorney's Office for the District of Columbia, pertaining to the time period June 1, 2003 through May 1, 2004.

Plaintiff's lead counsel (a partner with Charlson, Bredehoft, and Cohen, P.C., in Reston, Virginia), Elaine Bredehoft (Lead Counsel Elaine Bredehoft), was the only attorney who attested to her own normal billing rate. She was also the only attorney who attested to the respective normal billing rates of the other attorneys in her firm. Lead Counsel Elaine Bredehoft attested that her normal billing rate from August 15, 2005 until April 30, 2006 was $400.00 per hour, while her normal billing rate from May 1, 2006 forward was $450.00 per hour. She also attested as follows to the normal billing rates and the

years of experience of the following other attorneys in her firm, during the relevant time period:

**TABLE 1**

| Name | Years' Experience | Hourly Rate |
|------|------------------|-------------|
| Partner Peter Cohen | 18-19 | $400.00 |
| Associate S. Christian Wickwire | 6-7 | $350.00 |
| Associate Carla Brown | 5-6 | $350.00 |
| Associate Anjuma Goswami | 2-3 | $325.00 |
| Associate Brittany Sakata | 1 | $300.00 |
| Associate Jennifer Harper | 1 | $250.00-275.00 |

Notably, Plaintiff did not file any affidavits of attorneys outside the firm of Charlson, Bredehoft, and Cohen, P.C., regarding the prevailing market rates of attorneys in the Eastern District of Virginia for similar work.

The two fee awards in the other cases cited by Plaintiff most helpful to Plaintiff's position are: *Scott v. Hoynanian Enterprises, Inc.*, No. 03-1435-A (E.D.Va. Aug. 2004) (pregnancy discrimination, retaliation, FMLA and constructive fraud—$350.00 per hour approved for Lead Counsel Elaine Bredehoft) and *Stiles v. Town of Leesburg*, No. 00-628 (E.D.Va. Jan. 2001) (§ 1983 whistleblower retaliation—$290.00 per hour approved for Lead Counsel Elaine Bredehoft).

The Laffey Matrix submitted by Plaintiff, which the District of Columbia Circuit has accepted in general as "a useful starting point" for determining the prevailing hourly rate for litigation counsel in Washington, D.C., *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995), lists the following hourly rates for the time period June 1, 2003 through May 31, 2004:

**TABLE 2**

| Years' Experience | Hourly Rate |
|---|---|
| 20+ | $380.00 |
| 11-19 | $335.00 |
| 8-10 | $270.00 |
| 4-7 | $220.00 |
| 1-3 | $180.00 |

In making its loadstar calculations, the district court applied, without reduction, the hourly rates requested by Plaintiff. According to Defendant in its Opening Appellate Brief, Lead Counsel Elaine Bredehoft and Partner Cohen should charge no more than $300.00 per hour; Associates Brown and Wickwire no more than $250.00 per hour; Associates Goswami and Harper no more than $200.00 per hour; and Associate Sakata no more than $180.00 per hour.

Keeping in mind our extremely deferential standard of review in this area, we hold the district court abused its discretion in basing the Fee Award on the hourly rates requested by Plaintiff, without reduction. Plaintiff's prevailing-hourly-rate evidence is inadequate to support the award. Critically, beyond the affidavit of Lead Counsel Elaine Bredehoft, Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which our case law required him to do. *Plyler*, 902 F.2d at 277 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal quotation marks omitted).

The cases to which Plaintiff points as examples of similar fee awards in like cases are insufficient to carry Plaintiff's

burden of proof. For example, Plaintiff's best case shows that Lead Counsel Elaine Bredehoft was awarded $350.00 per hour in August 2004. In her affidavit, Lead Counsel Elaine Bredehoft attested that she started billing time on Plaintiff's case in August 2005 at $400.00 per hour (a fourteen percent increase over the $350.00 per hour she charged Plaintiff just a year earlier) and by May 2006, she billed time on Plaintiff's case at $450.00 per hour (a twenty-nine percent increase over the $350.00 per hour she charged Plaintiff less than two years earlier). Notably, these percentage increases cannot simply be attributed to economic inflation for the same time periods. The annual rate of inflation in the United States for 2005 was 3.39 percent and 3.24 percent for 2006. *See* Inflation-Data.com.

Moreover, the Laffey Matrix is also insufficient to carry Plaintiff's burden of proof. First, Plaintiff has provided no evidence that the Laffey Matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of litigation attorneys in Reston, Virginia, a suburb of Washington, D.C. Second, even when adjusted for inflation, every hourly rate requested by Plaintiff exceeds, in some cases by a significant amount, the hourly rates listed in the Laffey Matrix.

After considering the parties' arguments and the entire record in this case, we hold the district court abused its discretion in applying hourly rates above the following hourly rates:

**TABLE 3**

| Name | Hourly Rate |
| --- | --- |
| Partner Elaine Bredehoft | $380.00 |
| Partner Peter Cohen | $335.00 |
| Associate S. Christian Wickwire | $250.00 |
| Associate Carla Brown | $250.00 |
| Associate Anjuma Goswami | $200.00 |
| Associate Jennifer Harper | $200.00 |
| Associate Brittany Sakata | $180.00 |

*See Depaoli v. Vacation Sales Assocs.*, 489 F.3d 615 (4th Cir. 2007) (reducing attorney's hourly rate from $305.00 and $325.00 per hour sought by plaintiff to $225.00 per hour because plaintiff produced no evidence of prevailing market rate of $305.00 and $325.00 per hour; the only relevant evidence in the case showed that plaintiff's attorney regularly charged plaintiff $225.00 per hour). Accordingly, we instruct the district court on remand to recalculate the Fee Award using the hourly rates we just set forth in **Table 3,** *supra*.

We now turn to Defendant's argument pertaining to the number of hours expended by Plaintiff's attorneys. Defendant contends that this was a relatively simple case that was over-staffed and overworked by Plaintiff's attorneys, who sought compensation for more than 1,000 hours of attorney time and more than 250 hours of paralegal time. By way of example of the unreasonableness of the hours billed, Defendant points to the more than 100 hours billed for drafting various discovery motions. As Defendant notes, however, the billing records indicate that counsel for Plaintiff began billing for the preparation of a motion to compel three months before discovery had even begun, and the records further show that counsel began billing for another motion the day after the relevant discovery request was served. Defendant argues, *inter alia*, that

the timing of Plaintiff's counsel's preparation of these two discovery motions shows that Plaintiff billed time in attempts to contrive discovery disputes. Because the appellate record is inadequate for us to intelligently address this argument, we instruct the district court on remand to reconsider the reasonableness of the hours claimed by Plaintiff's counsel, and the district court should specifically and expressly address Defendant's arguments regarding Plaintiff's discovery motions. Perhaps the district court will explain that it had taken Defendant's argument into account in reducing the total amount of time, labor, and costs by twenty-five percent. Nonetheless, Defendant has raised enough questions in this regard to warrant further explanation by the district court.

Finally, we hold the district court clearly erred in finding that "[t]he deadlines imposed by the court required Plaintiff's counsel to work at a faster pace . . . ." (J.A. 1018). Plaintiff does not dispute Defendant's assertion in its opening appellate brief that the deadlines imposed by the district court in this case were "the standard deadlines for litigating any case in the Eastern District" of Virginia. (Defendant's Opening Br. at 55). Accordingly, in recalculating the Fee Award on remand, the district court should not take into account any notion that the deadlines imposed by the district court required Plaintiff's counsel to work at a faster pace.

V.

In conclusion, we vacate the Fee Award and remand to the district court for further proceedings consistent with this opinion. On remand, we instruct the district court to recalculate the Fee Award. In so doing, we instruct the district court to: (1) clear up the double-counting discrepancy surrounding its July 9, 2007 award of $4,082.74 in taxable costs in favor of Plaintiff while seemingly awarding the same amount in the Fee Award; (2) not award Plaintiff any attorneys' fees or costs accrued after May 11, 2007; (3) recalculate the Fee Award using the hourly rates we set forth in **Table 3**, *supra*; (4)

reconsider the reasonableness of the hours sought and specifically and expressly address Defendant's argument regarding Plaintiff's discovery motions; and (5) not take into account any notion that the deadlines posed by the district court required Plaintiff's counsel to work at a faster pace than otherwise required in the Eastern District of Virginia.

*VACATED AND REMANDED*