Pamela L. KENNEDY, individually, and on behalf of all others similarly situated, Plaintiff,

v.

A TOUCH OF PATIENCE SHARED HOUSING, INC., Defendant.

Civil Action No. 2:10cv398.

United States District Court, E.D. Virginia, Norfolk Division.

April 15, 2011.

Joseph A. Schreiber, Esq., for Plaintiff.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is again before the Court on plaintiff Pamela L. Kennedy's amended motion for default judgment against defendant A Touch of Patience Shared Housing, Inc. After examination of the uncontested evidence submitted by plaintiff in connection with the instant motion, as well as the record of this matter as a whole, the Court has determined that a hearing on the instant motion is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. Fed. R. Civ. p. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons stated here-

in, the Court **GRANTS** plaintiff's motion and **DIRECTS** that default judgment be entered against defendant in the amounts detailed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed the complaint in this case on August 12, 2010, alleging that defendant failed to pay plaintiff the statutorily mandated minimum wage and overtime pay during plaintiff's employment with defendant, in violation of sections 206 and 207 of the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (the "FLSA"). Docket No. 1. Defendant's registered agent returned an executed waiver of service dated September 20, 2010. Docket No. 4. On November 3, 2010, after the period within which defendant could have filed a timely answer or other response had elapsed, plaintiff requested that the Clerk of this Court enter default against defendant. Docket No. 6. The Clerk entered default on that same date. Docket No. 7.

On November 4, 2010, plaintiff filed a motion for default judgment along with a supporting affidavit, and she subsequently filed the amended motion for default judgment and affidavit currently before the Court on November 5, 2010. Docket Nos. 8 & 9. On November 10, 2010, plaintiff filed a notice certifying that she mailed a copy of the instant motion to defendant. Docket No. 10. To date, defendant has not appeared or filed anything in this case.[1]

By Order dated January 25, 2011, this Court ordered plaintiff to file a supplemental affidavit in support of the instant motion providing more specific and detailed information regarding the amount of time plaintiff worked, the wages plaintiff was paid by defendant, and any claimed amounts of additional wages that plaintiff was not paid. The Court required plaintiff to attach, in appropriately redacted form, all relevant supporting documentation, including any documentary proof of the wages actually paid to plaintiff by defendant and the excess hours allegedly worked by plaintiff. The Court also required plaintiff to provide the necessary documentation, including evidence regarding the relevant prevailing market rate, for the Court to determine the reasonableness of the requested attorney's fee award. The Court further required such affidavit to explain why plaintiff, who described herself as a salaried employee, *see* Docket No. 9 Ex. A. ¶ 6, is nevertheless subject to the provisions of the FLSA invoked in the complaint.

Plaintiff timely filed her supplemental affidavit[2] on February 1, 2011. The Court

---

**1.** The Court notes that in November 2010, the Clerk's office of this Court received a telephone call from an individual claiming to be defendant's owner. The individual claimed that she could not afford an attorney, had not understood the nature of the waiver of service when she signed it, and wanted to file a response with the Court without an attorney. The Clerk's office advised her that corporations typically must be represented by counsel in federal court, *see Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (noting the well-established rule that "a corporation may appear in the federal courts only through licensed counsel" and

explaining that "the rationale for that rule applies equally to all artificial entities"), but indicated that if she wanted to send something in writing, it would be forwarded to the Court's attention. To date, the Court has received no such response.

**2.** The Court notes that plaintiff styled this document an "amended affidavit." Docket No. 12. In light of that fact, as well as the notable fact that certain of plaintiff's estimates in the amended affidavit diverge from those contained in plaintiff's original affidavit, the Court construes plaintiff's amended affidavit as replacing, and not a supplement to, her original affidavit.

has examined this additional evidence, as well as the record of this matter as a whole, and now has adequate information to render a decision on the instant motion.

## II. STANDARD OF REVIEW

### A. Default Judgment

As noted above, default has already been entered by the Clerk against defendant. As the Court previously noted in its January 25, 2011 Order, because the complaint in this matter does not request a sum certain or provide precise calculations of damages, the Court construes the instant motion as being made pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, which authorizes the Court (as opposed to the Clerk) to enter default judgment.

By its default, defendant has conceded the factual allegations of the complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir.2001). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.* (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). Instead, the court must "determine whether the well-pleaded allegations in [the movant's] complaint support the relief sought in [the] action." *Ryan*, 253 F.3d at 780.

### B. Recovery under the Pair Labor Standards Act

Section 206 of the FLSA requires in relevant part that "[e]very employer shall pay to each of his employees ... wages ... not less than $7.25 an hour...." 29 U.S.C. § 206(a)(1)(C). Section 207 requires in relevant part that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Section 216(b) provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed [above] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b).

## III. ANALYSIS

### A. "Employees" versus "Independent Contractors"

In order to prevail on her claim and recover under the FLSA, plaintiff must, of course, first establish that she was an employee of defendant. Although plaintiff's claimed status as an employee of defendant has not been formally contested in this matter, plaintiff acknowledges in her supplemental affidavit that defendant classified her as an independent contractor. Docket No. 12 ¶¶ 3–5 & Ex. A. The question of "whether a worker is an employee or independent contractor under the FLSA" is one of law. *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th

Cir.2006). In addressing that question, courts apply a six-factor test derived from the United States Supreme Court's decision in *United States v. Silk*, 331 U.S. 704, 716–18, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947):

> The factors are (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304–05.

■ The allegations of plaintiff's complaint and the statements contained in her amended affidavit filed in support of the instant motion appear to address each of these six factors. Although the pleadings before the Court fail to describe the nature of defendant's business in any detail, plaintiff's claimed duties, as well as defendant's business name, suggest that defendant operates facilities that house multiple individuals and provide associated living services. Plaintiff explains that she cooked and served meals, cleaned, helped residents with small household tasks, including laundry and taking medication. Compl. ¶ 8, Docket No. 12 ¶ 6. She exercised no managerial or supervisory function over others and exercised no control, discretion, or independent judgment with respect to her own duties. Compl. ¶ 8, Docket No. 12 ¶¶ 4–5. She had no opportunities for profit or loss dependent on her managerial skill, but instead received a generally fixed amount of cash at generally regular intervals. Docket No. 12 ¶¶ 3–4. Plaintiff did not invest in or provide her own equipment or materials, but instead was provided by defendant with all requisite materials. Docket No. 12 ¶ 4. The nature of plaintiff's duties manifestly did not require specialized skills or training. Compl. ¶ 8, Docket No. 12 ¶ 6. Plaintiff worked for defendant at two different locations of defendant's business on a full-time basis for approximately four and a half months within a five and a half month period of time. Compl. ¶ 5; Docket No. 12 ¶ 2. Plaintiff further claims that her services were integral to defendant's business. Docket No. 12 ¶ 4.

In light of the foregoing representations by plaintiff, which to date have not been contested by defendant, the Court concludes that plaintiff was not an independent contractor, but was instead an employee of defendant within the meaning of the FLSA. Consequently, the Court turns to the merits of plaintiff's claims.

**B. Plaintiff's Claims**

**1. Minimum Wage Shortfall**

■ Plaintiff claims that the purported "salary" defendant allegedly paid her, which was supposed to be $600.00 monthly, paid in two semimonthly installments of $300.00 each,[3] fell below the statutory minimum hourly wage of $7.25, both for the hours she was scheduled to work and the hours she actually worked. Plaintiff's

---

**3.** The Court notes that plaintiff's initial affidavit filed in support of the instant motion contained slightly inconsistent claims that she was paid "a regular rate of three-hundred dollars ($300.00) *bi-weekly*" but that she "received six-hundred ($600.00) *a month*." Docket No. 9 Ex. A ¶¶ 7–8 (emphasis added). Bi-weekly and semi-monthly are not synony-

mous; instead, the former results in twenty-six pay periods per year, whereas the latter results in only twenty-four. It appears that plaintiff's amended affidavit corrects this inconsistency, referring to her pay only in terms of a monthly "base rate ... which was to be paid semi-monthly." Docket No. 12 ¶ 3.

"Detailed Damages Calculation," which counsel submitted as Exhibit C to plaintiff's amended affidavit, provides the raw data necessary to confirm the validity of plaintiff's claim in this regard, and to calculate the minimum wage shortfalls owed to plaintiff by defendant. However, it appears that the methodology plaintiff employed in Exhibit C to calculate that shortfall was flawed.

Plaintiff calculated the shortfall on the basis of the hourly rate represented by her salary (approximately $3.46), simply multiplying the resulting hourly wage shortfall (approximately $3.79) by the number of non-overtime hours she worked each day. However, built into that initial calculation of the $3.46 base hourly rate is the assumption that plaintiff *actually received* her salary of $600.00 in its entirety each month during the tenure of her employment with defendant. The evidence submitted by plaintiff suggests that she did not, but instead incurred what appears to be a double shortfall: not only did plaintiff's salary fall short of the statutory minimum hourly wage required by law, but defendant's actual payments to plaintiff did not even provide the full amount of that salary.

Plaintiff's "Detailed Damages Calculation" claims wages, including significant amounts of overtime, for the entire months of February, March, April, May, and June 2010, as well as the first week of July 2010.[4] Thus, plaintiff's purported salary for that period should have been approximately $3,150.00: $600.00 for each of the five full months plus approximately $150.00 for plaintiff's last week of work. Plaintiff only claims to have received a total of

$2,700 from defendant. Consequently, the average base hourly rate that plaintiff was actually paid by defendant was less than $3.46.

The Court has instead employed a more straightforward basis for determining plaintiff's minimum wage shortfall. Plaintiff claims to have worked over forty hours during all but one of the twenty-three weeks she was employed by defendant; she only worked for ten hours on one day (July 5, 2010) during her twenty-third week. Consequently, plaintiff worked a total of 890 non-overtime hours during the tenure of her employment with defendant (40 hours × 22 weeks = 880 hours + 10 hours = 890 hours). Her earnings for those hours at the statutory minimum hourly wage should have been $6,452.50 (890 hours × $7.25 per hour = $6,452.50). Deducting the total amount she was actually paid by defendant for her employment ($2,700) results in a total hourly minimum wage shortfall of $3,752.50 ($6,452.50–$2,700 = $3,752.50).

### 2. Overtime Wages

■ As noted above, "[t]he Fair Labor Standards Act requires that an employee receive overtime pay if she works more than 40 hours in any workweek. 29 U.S.C. § 207(a). The statute, however, exempts from this requirement 'any employee employed in a bona fide executive . . . capacity.' 29 U.S.C. § 213(a)(1)." *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 513 (4th Cir.2011). The phrase "bona fide executive capacity" is defined as any employee meeting all of the following criteria:

---

**4.** Plaintiff's amended affidavit contains the incongruous claims that although she was "employed by [defendant] from on or around February 1, 2010 to on or around July 12, 2010"—a period of approximately five and a half months—she only "worked for Defendant for approximately four months and two weeks." Plaintiff's "Detailed Damages Calculation" claims wages for virtually the entire five-month period of her claimed employment by defendant.

(1) Compensated on a salary basis at a rate of not less than $455 per week . . .

(2) Whose primary duty is management . . .

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

As with the issue of plaintiff's employee status, the allegations of the complaint and the statements contained in plaintiff's amended affidavit filed in support of the instant motion appear to be appropriately tailored to address each of the above criteria. *See* Compl. ¶ 8 (denying that plaintiff had primarily managerial duties, supervised two or more other employees, or had authority to hire or fire other employees); Docket No. 12 ¶ 3 (claiming that plaintiff "was to receive a base rate of six-hundred dollars ($600.00) a month, which was to be paid semi-monthly in the amount of three-hundred dollars per pay period ($300.00)"). Consequently, in light of these allegations, which to date have not been contested by defendant, the Court concludes that plaintiff was not a "bona fide executive" of defendant within the meaning of 29 C.F.R. § 541.100(a), and thus was not exempt from the provisions of the FLSA.

■ In light of that conclusion, the fact that plaintiff was nominally a "salaried" employee provides no safe harbor for defendant in this case. "Employees covered by the FLSA are entitled to receive overtime whether they are paid a straight salary or are paid on an hourly basis." *Aiken v. County of Hampton*, 172 F.3d 43, 1998 WL 957458, at *1 (4th Cir. Sept. 22, 1998) (unpublished table decision) (citing 29

C.F.R. §§ 778.110 & 778.113, which provide the methods for calculating overtime rates for hourly wage earners and salaried employees, respectively).

In a related vein, the Court notes that applicable regulations also provide a possible alternative salary basis:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.

29 C.F.R. § 778.114(a). However, even though such an alternative "fluctuating workweek" salary basis might be plausible here, defendant has not appeared in this matter to make any claims to that effect, and there is no evidence in the record currently before the Court to establish that such an understanding between the parties existed. Moreover:

> The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the [FLSA], and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.

29 C.F.R. § 778.114(c). Plaintiff's claimed "salary" of $600.00 per month would not even suffice for 20 hours of minimum-wage work per week, let alone a full 40–hour workweek or *any* amount of overtime.

As with the minimum wage shortfall calculations discussed above, plaintiff's "Detailed Damages Calculation" provides the raw data necessary for the Court to calculate the total overtime wage compensation owed to plaintiff, but it appears that the methodology she employed in calculating that total was also flawed. Plaintiff's overtime calculations were made on a day-by-day basis, counting as overtime any hours worked beyond eight on a particular day. This methodology, however, failed to account for the fact that plaintiff, in several instances, worked on more than five days within a given week.

This flaw has two consequences. First, plaintiff's calculations for certain weeks—to wit, the weeks of March 29, May 17, and June 28, 2010—failed to count *all* of the hours worked beyond forty in those weeks as overtime.

Second, plaintiff claims two hours of overtime on July 5, 2010, the last day she performed work for defendant. However, overtime is not assessed on a day-by-day basis for hours worked over eight, but instead, as discussed above, on a weekly basis for hours worked over forty. Since plaintiff does not claim to have worked any additional hours for defendant during that week (or, indeed, ever again), the Court considers all ten of the hours she worked on July 5, 2010 to be non-overtime hours, and thus has already included those hours in its minimum wage shortfall calculations above.

Therefore, with these issues resolved, the Court's own calculations, which are based on the data contained in plaintiff's Exhibit C, and are reflected in Exhibit A to this Opinion and Order, result in a total

of 225.5 overtime hours worked, not 203.5, as claimed by plaintiff. At an hourly rate of 1.5 times the minimum wage (1.5 × $7.25 = $10.875),[5] this results in a total amount owed of $2,452.31 in overtime wages (225.5 hours × $10,875 per hour = $2,452.31).

### 3. Liquidated Damages Pursuant to 29 U.S.C. § 216(b)

■ As previously noted, section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee" for "liquidated damages" in an amount equal to "the amount of [the employee's] unpaid minimum wages, or [the employee's] unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). As the United States Court of Appeals for the Fourth Circuit has noted, the "FLSA plainly envisions that liquidated damages in an amount equal to the unpaid ... compensation are the norm for [such] violations." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997); *see, e.g., Lizarzu v. Vallejos*, Civ. Action No. 1:08cv858, 2009 WL 3055443, at *1, *9 (E.D.Va. Sep. 22, 2009) (adopting U.S. Magistrate Judge's proposed findings of fact and recommendations and awarding liquidated damages corresponding to both unpaid minimum and overtime wages). Indeed, an award of such liquidated damages is generally-mandatory.

Only where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of FLSA

---

**5.** Since plaintiff's monthly salary in this matter fell below the statutory minimum hourly wage, in violation of the FLSA, the Court uses the statutory minimum hourly wage, instead of her actual regular hourly rate of pay, as the

basis for calculating plaintiff's overtime rate. *See* 29 C.F.R. § 778.113(b) (noting that "the resultant [hourly] rate ... must not be less than the statutory minimum wage").

may the court exercise its discretion to deny liquidated damages.

*Id.* (quoting 29 U.S.C. § 260). Needless to say, in this matter's current procedural posture, no such showing has been made by defendant. Consequently, in light of the Court's conclusions with respect to plaintiff's claims for minimum wage shortfalls and overtime compensation, the Court will grant plaintiff additional liquidated damages in the total amount of $6,204.81 ($3,752.50 minimum wage shortfall + $2,452.31 unpaid overtime wages = $6,204.81).

### 4. Attorney's Fees and Costs

Despite defendant's failure to appear to contest the awarding of attorney's fees to plaintiff, the Court is nevertheless obligated to review the fee award request independently for reasonableness. Such a review necessarily begins with the determination of the so-called "lodestar figure." *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir.2009) (citing *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir.2008) ("In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.")). The lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

The fee applicant bears the burden of proving the reasonableness of the requested hourly rates, and "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Gris-*

*som,* 549 F.3d at 321 (quoting *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) (internal quotation marks and citations omitted)); *accord Westmoreland Coal Co. v. Cox,* 602 F.3d 276, 290 (4th Cir.2010); *Robinson,* 560 F.3d at 244. In this connection, the United States Court of Appeals for the Fourth Circuit has explained:

> The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of actual rates which counsel can command in the market.

*Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987); *see also Daly v. Hill,* 790 F.2d 1071, 1080 (4th Cir.1986) (noting the "customary" practice of submitting "affidavits from other area attorneys as evidence that [the] requested rates were within the market rates generally charged for similar services").

In analyzing the overall reasonableness of a fee request, the Fourth Circuit has "instructed that a district court's discretion should be guided by the … twelve factors" established by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Robinson,* 560 F.3d at 243. These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.1978); *accord Robinson,* 560 F.3d at 243–44 (quoting *Barber,* 577 F.2d at 226 n. 28); *Grissom,* 549 F.3d at 321 (citing *Spell,* 824 F.2d at 1402 n. 18). Although "these factors must be considered by district courts in this circuit in arriving at a determination of reasonable attorneys' fees in any case where such determination is necessary," *Barber,* 577 F.2d at 226, this Court need not address in detail every single one of them. *See, e.g., Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assocs., LLC,* 699 F.Supp.2d 766, 768 (E.D.Va.2009); *Moore v. Southtrust Corp.,* 392 F.Supp.2d 724, 733 (E.D.Va. 2005). Instead, the Court discusses those factors that are relevant to its determination of the reasonable amount of attorney's fees to award in each particular case.

■■■ Plaintiff's counsel has submitted an invoice containing detailed time entries for his firm's work on this matter, as well as a declaration detailing his credentials, experience, and the requisite information regarding currently prevailing market rates in Virginia and in this District for similar cases. Counsel's billing rates ($350.00/hour for Mr. Schreiber and $100.00/hour for his paralegal), total time spent on the instant matter (5.8 hours for Mr. Schreiber and 4.5 hours for his paralegal), and total amount of fees ($2,871.90) and costs (this Court's $350.00 filing fee and $35.00 in postage, copies, and long distance telephone costs) requested all appear to be entirely reasonable and consis-

tent with recent fee awards in the Eastern District of Virginia in cases of comparable scope and complexity, including one recent fee awarded to Mr. Schreiber himself. *See Walker v. Dovetails, Inc.,* Civ. No. 3:10cv526–HEH, 2010 WL 5878336, at *4 (E.D.Va. Nov. 30, 2010) (Dohnal, Mag. J.) (recommending the award of fees to Mr. Schreiber's firm in another FLSA case in the Richmond Division of this Court at the requested rate of $350.00/hour for Mr. Schreiber's work, but recommending a reduction of the requested rate of $100.00/hour for his paralegal's services); *adopted,* 2011 WL 744632 (E.D.Va. Feb. 24, 2011) (Hudson, J.); *Jackson v. Estelle Place, LLC,* No. 1:08cv984 (LMB/TRJ), 2009 WL 1321506, at *2–3 (E.D.Va. May 8, 2009), *aff'd,* 391 Fed.Appx. 239 (4th Cir.2010) (2– 1 decision) (reducing requested rates of, *inter alia,* $410.00/hour for attorneys and $130.00/hour for a legal assistant in an FLSA case in the Alexandria Division of this Court to $350.00/hour for attorneys and $60.00/hour for the legal assistant); *but see Castel v. Advantis Real Estate Servs. Co.,* Civ. Action No. 2:07cv435, 2008 WL 3348774, at *4 (E.D.Va. Aug. 8, 2008) (reducing requested rates of $350.00/hour for the same attorneys who appeared in *Jackson* and $120.00/hour for their legal assistants to $295.00/hour for attorneys and $110.00/hour for paralegals in another FLSA case in the Norfolk Division of this Court).

The time and labor expended by plaintiff's counsel appear commensurate with the current procedural posture of this matter. As detailed above, the rates requested appear in conformity with rates customarily requested in other FLSA litigations, particularly since plaintiff's counsel was awarded the same rate for the same type of case approximately six months ago in the Richmond Division of this Court. Furthermore, the total amount of fees requested appears to be proportionate to the total

amount of damages awarded to plaintiff in this matter, and the declaration submitted by plaintiff's counsel details his extensive experience in FLSA litigation.

For all of these reasons, the Court concludes that the hourly rates requested by plaintiff's counsel in this matter ($350.00/hour for Mr. Schreiber and $100.00/hour for his paralegal) constitute appropriate lodestar figures, and that the number of hours spent by Mr. Schreiber and his paralegal working on this matter are reasonable. Consequently, since the fees and costs requested by plaintiff's counsel are reasonable, the Court will award plaintiff the requested amounts in full.

### 5. Pre- and Post–Judgment Interest

█ The award of interest on judgments is normally a matter within the Court's discretion. However, the Supreme Court has "held that FLSA's liquidated damages were provided in lieu of calculating the costs of delay-which is the function of prejudgment interest-and therefore that a claimant could not recover both prejudgment interest and liquidated damages." *Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir.1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 714–16, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)); *accord Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1334 (4th Cir.1974) ("The award of liquidated damages more than adequately compensated [plaintiff] for the delay in payment of overtime wages due him, and the district court was correct in its refusal to award pre-judgment interest") (citing *O'Neil*, 324 U.S. at 715, 65 S.Ct. 895); *Ventura v. Bebo Foods, Inc.*, 738 F.Supp.2d 8, 22–23 (D.D.C.2010) (discuss-

ing *O'Neil* and noting that, even after the passage of 29 U.S.C. § 260 created the "good faith" exception to the otherwise mandatory award of liquidated damages for violations of the FLSA, "it has been the practice of courts in [the District of Columbia] Circuit to deny prejudgment interest under § 216(b) when a court awards a plaintiff the maximum amount of liquidated damages"). On the basis of this authority, the Court must deny plaintiff's request for pre-judgment interest.

There does not, however, appear to be any analogous prohibition in FLSA jurisprudence against awards of post-judgment interest. *See, e.g., Thomas v. County of Fairfax, Va.*, 758 F.Supp. 353, 370 (E.D.Va.1991) ("Postjudgment interest is due on awards under FLSA in accordance with 28 U.S.C. § 1961.") (citing *Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 751–52 (5th Cir.1983)). The Court will therefore award post-judgment interest pursuant to, and at the interest rate provided by, 28 U.S.C. § 1961.

### IV. CONCLUSION

For all of the foregoing reasons, plaintiff's motion for default judgment against defendant is **GRANTED,** and the Clerk is **DIRECTED** to enter default judgment in favor of plaintiff against defendant in the principal amount of $12,409.62, plus post-judgment interest pursuant to, and at the interest rate provided by, 28 U.S.C. § 1961. This principal amount consists of $3,752.50 in hourly minimum wage shortfalls, $2,452.31 in unpaid overtime wages, and $6,204.81 in liquidated damages.[6] Plaintiff's request for reasonable attor-

---

**6.** The Court notes that plaintiff's counsel indicated in a letter to defendant that defendant "wrongfully did not withhold FICA or any other applicable state and federal taxes" from the amounts previously paid to plaintiff. Docket No. 12 Ex. A. Although the issue of the appropriate tax withholdings is not currently

before the Court, the Court cautions that plaintiff should work with her counsel, the Internal Revenue Service, and the Virginia Department of Taxation to ensure that all applicable state and federal taxes are paid, both on income already received by plaintiff

ney's fees and costs pursuant to 29 U.S.C. § 216(b) is also **GRANTED,** and the Court hereby **AWARDS** and **ORDERS** defendant to pay to plaintiff, within thirty (30) days of the date of this Opinion and Order, $2,480.00 in attorney's fees, $385.00 in costs, and $6.90 in interest on those amounts.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for plaintiff and to defendant's registered agent at the address provided by defendant in the waiver of service.

**IT IS SO ORDERED.**

| Kennedy v. A Touch of Patience Shared Housing, Inc., Civil Action No. 2:10cv398 Exhibit A to April 15, 2011 Opinion and Order | | | | | |
|---|---|---|---|---|---|
| Date of Payment | Amount Paid | Work Week | Total Hours | Non–Overtime Hours | Overtime Hours |
| 2/18/2011 | $ 275.00 | 2/1/2010 | 43 | 40 | 3 |
| 3/1/2011 | $ 275.00 | 2/8/2010 | 42 | 40 | 2 |
| 4/7/2011 | $ 150.00 | 2/15/2010 | 41.5 | 40 | 1.5 |
| 4/15/2011 | $ 150.00 | 2/22/2010 | 41.5 | 40 | 1.5 |
| 5/1/2011 | $ 150.00 | 3/1/2010 | 41.5 | 40 | 1.5 |
| 5/8/2011 | $ 150.00 | 3/8/2010 | 41.5 | 40 | 1.5 |
| 5/18/2011 | $ 300.00 | 3/15/2010 | 41.5 | 40 | 1.5 |
| 6/1/2011 | $ 210.00 | 3/22/2010 | 41.5 | 40 | 1.5 |
| 6/5/2011 | $ 90.00 | 3/29/2010 | 85.5 | 4045.5 | |
| 6/17/2011 | $ 300.00 | 4/5/2010 | 73 | · | 40 |
| 7/1/2011 | $ 190.00 | 4/12/2010 | 49 | 40 | 9 |
| 7/9/2011 | $ 80.00 | 4/19/2010 | 50 | 40 | 10 |
| Total: | $2,320.00 | 4/26/2010 | 49 | 40 | 9 |
| Additional Payments: | $ 380.00 | 5/3/2010 | 50 | 40 | 10 |
| Grand Total Paid: | $2,700.00 | 5/10/2010 | 50 | 40 | 10 |
| | | 5/17/2010 | 72 | 40 | 32 |
| | | 5/24/2010 | 49 | 40 | 9 |
| | | 5/31/2010 | 49 | 40 | 9 |
| | | 6/7/2010 | 49 | 40 | 9 |
| | | 6/14/2010 | 48 | 40 | 2 |
| | | 6/21/2010 | 42 | 40 | 2 |
| | | 6/28/2010 | 56 | 40 | 16 |
| | | 7/5/2010 | 10 | 10 | 0 |
| | | Total Hours Worked: | 1115.5 | 890 | 225.5 |
| | | Applicable Hourly Wage: | | $ 7.25 | $ 10.875 |
| | | Total Wages Due: | | $6,452.50 | $2,452.31 |

from defendant and on the wages awarded by this Opinion and Order.

| | | |
|---|---|---|
| Total Wages Paid: | $2,700.00 | $ 0.00 |
| Shortfall Due: | $3,752.50 | $2,452.31 |
| Grand Total Due: | | $6,204.81 |